UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 1:21-cv-00039-FDW-DSC

| | |
|---|---|
| ANDREW EMANUELE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>KILILO KIJAKZI, )<br>*Acting Commissioner of Social Security*[1], )<br>)<br>Defendant. )<br>) | ORDER |

THIS MATTER is before the Court on Andrew Emanuele's ("Emanuele") Motion for Summary Judgment, (Doc. No. 12), filed September 29, 2021, and Defendant Commissioner's Motion for Summary Judgment, (Doc. No. 14), filed October 26, 2021. Plaintiff also filed a motion for leave to file excess pages, (Doc. No. 16). Emanuele seeks judicial review of an administrative decision of his application for Title II Disability Insurance Benefits ("DIB") pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the Court finds the Administrative Law Judge ("ALJ") did not commit reversible error. Accordingly, the Court GRANTS Commissioner's Motion for Summary Judgment and DENIES Emanuele's Motion for Summary Judgment. The Court also GRANTS the motion to file excess pages.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul, as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

## I. Background

On December 14, 2017, Emanuele applied for Title II DIB with an alleged onset date of October 3, 2016, and a date last insured of December 31, 2019, (Doc. No. 13, p. 3). His claim was initially denied on May 2, 2018, and upon reconsideration, denied again on June 20, 2018. Id. Subsequently, Emanuele filed a written request for a hearing before the ALJ which was held on April 29, 2020. Id. The ALJ issued an unfavorable decision on May 7, 2020, finding Emanuele was not under disability. Id.

The ALJ used the five-step sequential evaluation process set forth in the regulations for determining disability claims. See 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ found Emanuele met the insured status requirements of the Social Security Act on December 31, 2019, and that he had not engaged in substantial gainful activity during the period from his alleged onset date through his date last insured. (Doc. No. 9-3, p. 40). At step two, the ALJ found Emanuele had the following severe impairments: migraine headaches and cluster headaches. Id.; see also 20 C.F.R. § 404.1520(c). At step three, the ALJ found Emanuele did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments pursuant to 20 C.R.F. §§ 404.1520(d), 404.1525 and 404.1526. (Doc. No. 9-3, p. 43). At step four, after careful consideration of the entire record, the ALJ found Emanuele

> ha[d] the residual functional capacity [("RFC")] to perform a full range of work at all exertional levels but with the following non-exertional limitations: Occasional balance . . . no climbing ladders, ropes, or scaffolds; and he should avoid concentrated exposure to noise, vibration, hazards, and fumes and other respiratory irritants.

Id. From the evidence presented, the ALJ determined Emanuele was capable of performing past relevant work as a customer service representative, a customer service supervisor, work in marketing, work in sales, and work in billing; finding that this work did not require the

performance of work-related activities precluded by his RFC. Id. at p. 10. Finally, at step five, even after determining Emanuele could perform his past relevant work, the ALJ found jobs existed in significant numbers in the national economy that Emanuele could perform if he were unable to perform his past work. Id. A Vocational Expert ("V.E.") testified Emanuele would be able to perform occupations such as a counter supply worker, a church sexton, and a hand packager. The ALJ ultimately concluded Emanuele did not have a disability as defined by §§ 216(i) and 223(d) of the Social Security Act from October 31, 2018, through December 31, 2019. Id.; see also 20 C.F.R. § 404.1520(g).

In an attempt to present nearly two years of omitted medical evidence, Emanuele requested review of this decision by the Appeals Council, which was denied on December 11, 2020, on the basis that some of the records were irrelevant to the considered time period and the remainder failed to show a reasonable probability that it would change the outcome of the decision. (Doc. No. 9-3, p. 3).

Emanuele filed this action on September 29, 2021, asserting error in the ALJ's failure to: 1) adequately account for the vocationally limiting effects of Emanuele's migraine headaches; 2) consider the medical evidence from the relevant time period submitted on appeal; 3) adhere to the duty to fully and fairly develop the record; and 4) abide by the standards set forth in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Emanuele also argues that the structure of the Social Security Administration (SSA) is constitutionally invalid.

The parties' cross-motions for summary judgment are ripe for disposition.

## II. Standard Of Review

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner *de novo.* Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir.1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). The court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

The Fourth Circuit has defined "substantial evidence" as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Richardson, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212, 212 (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a

4

five-step process. 20 C.F.R. § 404.1520(a)(4). Pursuant to this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio, 780 F.3d at 634); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

### III. ANALYSIS

#### A. Constitutional Claim

Emanuele argues the structure of the Social Security Administration is constitutionally invalid, thereby making the Commissioner's decision invalid. (Doc. No. 13, p. 15). This Court first finds that the structure of the SSA is not constitutionally invalid. Recently, in Collins v. Yellen, 141 S. Ct. 1761 (2021), the Supreme Court held that where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction caused his alleged harm. In Collins, the Court reasoned that the relevant agency officials were "properly appointed" pursuant to a statute that exhibited "no constitutional defect in the . . . method of appointment" and that "the unlawfulness of [a] removal provision" does not "strip [an official] of the power to undertake the other responsibilities of his office[.]" The Court continued that "there is no reason to regard any of the actions taken" by the agency during this period "as void." Id. at 1787, 1788 n. 23. In this case, Emanuele, as in Collins, grounds his constitutional challenge only on the relevant removal restriction and not on the propriety of the Commissioner's appointment.

5

Yet, Emanuele offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits. Emanuele simply argues that all actions taken by the Commissioner–and in turn his appointed ALJ's–are void due to the unconstitutional removal provision. However, Collins expressly rejects this view. Id.; see also Stamm v. Kijakazi, No. 3:20-CV-02273, 2021 WL 6197749, at *5 (M.D. Pa. Dec. 31, 2021); Taffe v. Kijakazi, No. 20-CV-1974-WVG, 2022 WL 542884 at *11 (S.D. Cal. Feb. 22, 2022). Therefore, the final decision of the ALJ is not constitutionally defective.

### B. Limiting effects of attendance, time off-task, and bright lights

Emanuele claims the ALJ failed to build an accurate and logical bridge from the evidence to his conclusion that the RFC need not include limitations to attendance, time off-task, and bright lights. Emanuele argues the decision to exclude these limitations resulted in error because the ALJ failed to identify what he found regarding the frequency, duration, and intensity of Emanuele's migraines and cluster headaches. Emanuele also argues his condition waxes and wanes and the ALJ failed to consider his longitudinal record.[2] By way of example, Emanuele points to his testimony:

> He stopped working in 2016 because he started suffering with migraine headaches and . . . has suffered with almost daily headaches since [then] . . . his cluster headaches leave him incapacitated [but] have diminished [leaving him with] headaches about twenty days out of the month . . . his headaches last just for about a day . . . his migraines leave him sensitive to light, sounds, and smell . . . [and] he still gets his headaches whether he takes his medication or not, though on his medication he has some good days . . . [and] the frequency and unpredictability of his headaches are his biggest obstacles to holding a job.

---

[2] Emanuele improperly cites Arakas v. Comm'r Soc. Sec. Admin., 983 F.3d 83 (4th Cir. 2020). This case is not relevant here because the courts have limited the failure to appreciate the waning and waxing nature of a claimant's symptoms only to fibromyalgia. See Wagoner v. Comm'r of Soc. Sec., No. 520CV00145RJCDSC, 2022 WL 899456 (W.D.N.C. Mar. 28, 2022); Hayed v. Kijakazi, No. 220CV03033BHHMGB, 2022 WL 1057179 (D.S.C. Jan. 27, 2022).

6

(Doc. No. 9-3, p. 13-16).

The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The process for evaluating whether a claimant is disabled by non-exertional pain is two-step. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996). First, an ALJ must determine if there is objective medical evidence showing the existence of medical impairments resulting from anatomical, physiological, or psychological abnormalities that could reasonably be expected to produce the pain or other symptoms alleged. Id. (citing 20 C.F.R. § 404.1529(b)). Second, if after determining such evidence has been shown, "the ALJ must assess a claimant's exertional and non-exertional capacity including the ability to work on a regular and continuing basis." Reynolds v. Kijakazi, No. 1:21CV199, 2022 WL 1241646 at *7 (M.D.N.C. Apr. 27, 2022) (citing Hines v. Barnhart, 453 F.3d 559, 562–63 (4th Cir. 2006); 20 C.F.R. § 416.945(b)). The "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Reynolds, 2022 WL 1241646, at *7 (citing Mascio, 780 F.3d at 636). The ALJ must both identify evidence that supports his conclusion and builds an accurate and logical bridge from that evidence to that conclusion. Reynolds, 2022 WL 1241646, at *4 (citing Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018)). Remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review. Reynolds, 2022 WL 1241646, at *5 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2nd Cir. 2013)).

As an initial matter, although the ALJ did not expressly discuss *all* Emanuele's above-quoted testimony, the ALJ is under no obligation to discuss each and every statement made by Emanuele at the hearing. Reynolds, 2022 WL 1241646, at *5 (quoting Janet E.F. v. Saul, No. 5:20CV1638, 2021 WL 2808699, at n. 5 (C.D. Cal. July 6, 2021) (unpublished)) ("An ALJ is not required to discuss every piece of evidence or explain why every subjective limitation has been rejected . . ."). The ALJ properly implemented the appropriate two-step analysis when assessing whether Emanuele was disabled by non-exertional pain. Here, the ALJ first determined that Emanuele's impairments "could reasonably be expected to cause the alleged symptoms." (Doc. No. 9-3, p. 45). Second, the ALJ found in evaluating all the evidence that the "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Id.

To support these findings, the ALJ recounted Emanuele's testimony that "he had headaches daily, usually twenty days out of the month; he had a sensitivity to light and sound; his migraines lasted all day; his headaches persisted despite the medicine; and he had two shots of [a prescription] but was not sure he could afford them." Id. at p. 44. In evaluating the medical evidence regarding Emanuele's headaches, the ALJ explained:

> In July 2016 [Emanuele] saw Dr. Hull with complaints of a headache for one week. He took Flexeril with no help and was started on Imitrex. . . . He tried [Emanuele] on Topamax in September 2016 but noted concern of side effects. [A month later] he treated [Emanuele] with Imitrex and Verapamil. . . . In January of 2017, [Emanuele] was seeing a neurologist and headaches improved. [Improvement was noted again] in August and November 2017.
>
> Dr. Callahan, [the neurologist], noted symptoms of cluster headaches in January 2017 and increased Verapamil and continued Imitrex. In February 2017, the doctor noted that [Emanuele] had one round of severe headaches and was unable to find relief with typical medications but that Imitrex and Verapamil had helped. The

8

Case 1:21-cv-00039-FDW   Document 18   Filed 07/01/22   Page 8 of 14

> doctor added Depakote. [Emanuele] reported worsening headaches in July 2017 but reported doing better in January 2018 with cluster headaches being not as frequent or intense. He only got about two per week. In his last appointment in May 2018, [Emanuele] reported doing better with clusters not being as frequent and lasting about 10 to 15 minutes. He said that he did not get them every day but had a daily, low-grade headache. The doctor noted he was tolerating the medication well. The claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimants statements concerning the intensity, persistence and limiting effects… are not entirely consistent with the medical evidence and other evidence . . .

Id. at pp. 44-45. Thus, the ALJ provided two reasons for discounting Emanuele's testimony regarding the limiting effects of his headaches: (1) the medical reports supported a longitudinal showing that the headaches were getting better, and (2) the headaches have not stopped Emanuele from performing a variety of daily activities. Those daily activities included "light housework, taking short walks, running light errands, caring for his own personal needs, preparing meals, shopping in stores, watching the news, playing the flute . . . texting and emailing, reading, painting, gardening, paying bills, counting change, handling a savings account, and using a checkbook." Id. at p. 46.

The ALJ's conclusion is supported by substantial evidence in the record. Emanuele's contentions about the limiting effects and his ability to work are also discounted by his own physician who testified that Emanuele could still work an "eight-hour" workday. Id. Both state agency physicians opinioned to the avoidance of concentrated noise but did not include limitations of exposure to light and computer screens. Id. By his own admission, Emanuele can look at digital screens, including the tv, cellphone and computer. The ALJ's analysis of Emanuele's medical records, acknowledgement of Emanuele's subjective claims, and explanation of how he arrived at his conclusion, builds an accurate and logical bridge from the evidence to his conclusion that the RFC need not include limitations to bright lights and computer screens, attendance, and time off.

9

C. Concentration, Persistence, and Pace

Emanuele further contends the ALJ included no psychological limitations to account for limitations he has with his ability to concentrate, persist, or maintain pace and provided no explanation for this exclusion in violation of Mascio, 780 F.3d. 632.

Emanuele correctly recognizes the RFC is not required to imposes limitations on concentration, persistence, and pace, but the ALJ must provide a sufficient explanation as to why limitations in concentration, persistence, and pace were excluded. Scruggs v. Colvin, No. 3:14-cv-00466-MOC, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015). In Mascio, the ALJ found the claimant, who suffered from an adjustment disorder, had *moderate* limitations in concentration, persistence, and pace. However, the ALJ "ignor[ed] (without explanation) Mascio's moderate limitation in her ability to maintain her concentration, persistence, or pace" when he conducted the function-by-function analysis, id. at 633, but "said nothing about Mascio's mental limitations" in the hypothetical posed to the vocational expert. Id. at 637. "[B]ecause the ALJ . . . gave no explanation" for these omissions, "a remand [was] in order." Id. at 638.

Here, the ALJ noted Emanuele possessed "*mild* limitations in [his] ability to concentrate, persist, or maintain pace." (Doc. No. 9-3, p. 42). The ALJ explains this in the RFC by referencing Emanuele's ability to "drive, prepare meals, watch the new, manage funds, and handle his own medical care." Id. The ALJ concluded the evidence "did not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work." Id. at 43.

In his report, the ALJ summarized Emanuele's consultation with Karen Marcus, Psy.D. citing:

> On mental status evaluation, she noted that the claimant was alert and oriented times four, had expressive speech, was in touch with reality, thought processes were

coherent, and had functional abstract thinking and judgment. On immediate retention and recall, the claimant listed five of five objects and three of five on delayed recall. She indicated that [he] may have mild problems with attention and concentration, did not have any problems understanding instructions, and would not have difficulties retaining and following instructions . . . The state Agency psychologist opined that the claimant had no severe mental impairments.

Id. at pp. 41-42. This opinion is supported by Emanuele's medical records, which consistently note that he was alert and oriented with normal comprehension. For this reason and the above-mentioned daily activities, the ALJ concluded the RFC need not contain limitations regarding concentration, persistence, and pace. This Court finds the medical records provided by Emanuele support the ALJ's decision to not include any time off-task in the RFC. The ALJ both identifies evidence that supports his conclusion and builds an accurate and logical bridge from the evidence to the conclusion. Substantial evidence therefore supports the ALJ's decision.

### D. Development of the record

Emanuele contends his attorney failed to provide records from May 4, 2018, to April 29, 2020, and the ALJ failed in his duty to fully and fairly develop the record. The Court has read the transcript of Emanuele's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The relevant time period for purposes of this claim of DIB is from Oct 31, 2016, to December 31, 2019. Emanuele asserts the missing records show a continuing pattern that his headaches are frequent and severe enough to keep him out of work.

"Remand is appropriate where a claimant's representative was inadequate, and the representative's failings prejudiced the claimant." Kearney v. Astrue, 730 F. Supp. 2d 482, 484 (E.D.N.C. 2010) (citing Arms v. Gardner, 353 F.2d 197, 199 (6th Cir.1965)) ("his attorney failed and was admittedly unable to give him the legal assistance he should have had to present his

11

evidence and to cross-examine the witnesses produced at the hearing to contradict his claims. Under these circumstances claimant cannot be held to have had the full hearing that he was entitled to."). Additionally, "Where the ALJ fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded." Marsh v. Harris, 632 F.2d 296, 300 (4th Cir.1980). Rather, "the ALJ has a duty to explore all relevant facts and inquire into issues necessary for adequate development of the record and cannot rely on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir.1986). In either event, a remand is proper where the Commissioner's decision "might reasonably have been different had that evidence been before him when his decision was rendered.'" Sims v. Harris, 631 F.2d 26, 28 (4th Cir. 1980) (quoting King v. Califano, 599 F.2d 597, 599 (4th Cir.1979)).

Here, the ALJ noted in his report that Emanuele submitted or informed the ALJ about all written evidence but did not make note of medical records missing from May 2018 to December 2019. The record shows that, at the start of the hearing, the ALJ asked Emanuele's counsel if he had any problems with the exhibited evidence, and counsel replied "'no.'" (Doc. No. 15, p. 23). Counsel never indicated to the ALJ that the exhibited evidence was incomplete, therefore, the ALJ was not informed about any additional evidence dated before the ALJ's decision. If a claimant has additional evidence but misses the five-day deadline and none of the circumstances set forth at 20 C.F.R. §§ 404.935(b) and 416.1435(b) apply, the ALJ may decline to consider or obtain the evidence. 20 C.F.R. §§ 404.935(a), 416.1435(a). When the claimant wishes to submit additional evidence, he must do so to the Appeals Council who will determine if there is a reasonable probability that the additional evidence would change the outcome of the decision.

12

Here, Emanuele's testimony adequately accounts for the missing records. The ALJ asked him about his symptoms for the "last three or four years." (Doc. No. 9-3, p. 16). He answered that his current medication represents what he has been taking since 2016 and he gets migraines twenty days a month, but that if he takes medication he can get through the day. Id. He also testified regarding shots given to him that gave him good days. Id. at 17. The exclusion of the records did not prejudice Emanuele and it would not have reasonably resulted in a different decision had they been before the commissioner.

### E. AC's Decision Not to Remand

Emanuele argues that the Appeals Council erred by failing to consider medical evidence from the relevant period submitted on appeal. The Appeals Council denied remand because: 1) some of the evidence was not applicable to the relevant time period, and 2) the portion that was did not show a reasonable probability that the additional evidence would change the outcome of the ALJ decision. Importantly, "the rationale given by the Appeals Council in denying a request for review is not subject to court review." Doll v. Saul, No. 1:19-CV-85-MOC, 2019 WL 5866156 at *6 (W.D.N.C. Nov. 8, 2019) (citing Meyer v. Astrue, 662 F.3d 700, 705 (4th Cir. 2011)). Nevertheless, the Appeals Council properly denied review of the post-decisional evidence based on Emanuele's testimony.

Here, Emanuele's subjective claims of symptoms alternate month to month but do not evidence his inability to abide by the RFC found by the ALJ. In August 2018, Emanuele reported that his cluster headaches had diminished since May, and he had 2-3 attacks lasting 20 minutes (Doc. No. 9-3, p. 321). He stated he lets fear of headache stop him from engaging in things he enjoys, yet when he has a headache, he will take nothing. Id. at pp. 321-322. Though he reports a

13

headache at a pain level of 5/10 in January 2019, by March of the same year he reported not having a headache for six weeks, no cluster headaches and no severe headaches. He then signed up for a three-week comedy class and performed. Id. at p. 297.

Emanuele has failed to show the evidence would have resulted in a different decision, and substantial evidence supports the ALJ's decision.

## IV.  ORDER

**NOW THEREFORE IT IS ORDERED** that Emanuele's Consent Motion for Leave to File Excess Pages, (Doc. No. 16), is GRANTED; Emanuele's Motion for Summary Judgment, (Doc. No. 12), is **DENIED**; Defendant's Motion for Summary Judgment, (Doc. No. 14), is **GRANTED**; and the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

Signed: June 30, 2022

_____
Frank D. Whitney
United States District Judge